b

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

KATHERINE DESSELLE,                    CIVIL DOCKET NO. 1:21-CV-02213
Appellant

VERSUS                                 DISTRICT JUDGE DRELL

ANDREW M. SAUL,
COMMISSIONER, SOCIAL                   MAGISTRATE JUDGE PEREZ-MONTES
SECURITY ADMINISTRATION,
Appellee

---

## REPORT AND RECOMMENDATION

Before the Court is claimant Katherine Desselle's ("Desselle's") appeal from the denial of her claim for Social Security disability income benefits ("DIB"). Because Desselle has not shown the ALJ erred in finding she was not disabled, the final decision of the Commissioner of Social Security ("the Commissioner") is AFFIRMED and Desselle's appeal is DENIED.

## I.    Background

### A.    Procedural Background

Desselle filed an application for DIB on October 8, 2019, alleging a disability onset date of May 1, 2015 (ECF No. 8-1 at 142) due to chronic kidney disease ("CKD")[1] stage 3, and high blood pressure (ECF No. 8-1 at 185).  That application

---

[1] "Chronic kidney disease (CKD) means that your kidneys are damaged and can't filter blood as they should.  This damage can cause wastes to build up in your body.  It can also cause other problems that can harm your health. Diabetes and high blood pressure are the most common causes of CKD."   MedlinePlus Health Topics: Chronic Kidney Disease, available at *https://medlineplus.gov/chronickidneydisease.html* (U.S. National Library of Medicine and the National Institutes of Health)*.*

was denied by the Social Security Administration ("SSA") both initially and on reconsideration.  ECF No. 8-1 at 72, 78.

A *de novo* hearing was held before an administrative law judge ("ALJ") on December 8, 2020, at which Desselle appeared with her attorney and a vocational expert ("VE").  ECF No. 8-1 at 33.

Desselle last met the disability insured status requirements on June 30, 2020.  ECF No. 8-1 at 16.  The ALJ found that, although Desselle had severe impairments of obesity, chronic kidney disease ("CKD") Stage III, hypertension, and arrhythmia (ECF No. 8-1 at 16), she had the residual functional capacity to perform the full range of medium work (ECF No. 8-1 at 18).  Although Desselle could not perform any of her past relevant work, was closely approaching retirement age, and had a limited education, there were a significant number of jobs she could perform such as: resident care aide (DOT No. 355.377-018, medium, skilled, 10,000 jobs nationally); hospital cleaner (DOT No. 323.687-010, medium, SVP 2, 55,233 jobs nationally); and day worker (DOT No. 301.687-014, medium, SVP 2, 38,291 jobs nationally).  ECF No. 8-1 at 20-21.  The ALJ concluded that Desselle was not disabled at any time through the date of  his opinion on December 18, 2020.  ECF No. 8-1 at 22.

Desselle requested a review of the ALJ's decision, but the Appeals Council declined to review it (ECF No. 8-1 at 5) and the ALJ's decision became the final decision of the Commissioner.

Desselle then file this appeal for judicial review of the Commissioner's final decision.  Desselle raises the following issues for review (ECF No. 9):

1. The ALJ failed to articulate a rational medical evidentiary basis for ruling that the Plaintiff could perform the activities identified by the residual functional capacity on a regular and continuous basis.  Further, if the Plaintiff can only perform light work, she would be considered disabled under the "Grid" rules.

2. Under SSA's Program Operations Manual ("POM") DI 25010.001, the ALJ must consider that a claimant who is not working at the substantial gainful activity level, has a limited education, can no longer perform past work due to a severe impairment, is over 55, and has no past relevant work, is automatically considered disabled under an exception.  The Plaintiff meets all the criteria for the exception.

### B.    Medical Records

In October 2014, Desselle was diagnosed with hypertension and hypothyroidism.  ECF No. 8-1 at 442-44.

In June 2015, Desselle was 5' 1" tall and weighed 160 pounds.  ECF No. 8-1 at 440.  She was referred to cardiology for complaints of chest pain.  ECF No. 8-1 at 439-40.

Desselle again reported chest pain in September 2015.  ECF No. 8-1 at 433.  An exercise stress test in October 2015 showed a mild hypertensive blood pressure response.  ECF No. 8-1 at 430.  Desselle's sitting blood pressure was 154/97.  ECF No. 8-1 at 422.  Desselle was noted to have high blood pressure and chronic kidney disease, and was taking: Norvasc; amitriptyline HCl; Atenolol; Hydralazine HCl; Losartan Potassium; Pravastatin Sodium; Synthroid; Triamterene-HCTZ; Vitamin

E; Zoloft; Prenatal Vitamins; and Aspir-81. ECF No. 8-1 at 422. Desselle was diagnosed with generalized anxiety disorder and atherosclerotic heart disease of native coronary artery without angina pectoris. ECF No. 8-1 at 375.

In October 2015, Desselle was also diagnosed with mixed hyperlipidemia, hypertensive chronic kidney disease-Stage 3, myalgia, and hypothyroidism. ECF No. 8-1 at 421. The same diagnoses were made in November 2015, February 2016, March 2016, August 2016, and October 2016. ECF No. 8-1 at 379, 382, 393, 402, 413.

Desselle's blood pressure was: 154/97 in October 2015 (ECF No. 8-1 at 422); 144/89 in December 2015 (ECF No. 8-1 at 406); 141/90 in March 2016 (ECF No. 8-1 at 394); and 150/91 in August 2016 (ECF No. 8-1 at 383).

In October 2016, Desselle was diagnosed with calculus of the kidney. ECF No. 8-1 at 372-74.

In November 2016, Desselle underwent a transthoracic echocardiogram due to hypertension. ECF No. 8-1 at 364. Dr. Wesley Davis found her left atrium size was at the upper limits of normal, and she had mild regurgitation at the tricuspid valve. ECF No. 8-1 at 365-66. Dr. Wesley Davis diagnosed Desselle with hypertensive heart disease without heart failure, cardiomegaly, and nonrheumatic tricuspid valve disorder. ECF No. 8-1 at 363. Desselle was also diagnosed with kidney disease-Stage 3 (moderate). ECF No. 8-1 at 368.

4

In December 2016, Dr. Phani Morisetti, a nephrologist at the LSU Health Shreveport, Nephrology Clinic, found Desselle was 62 years old, 5'1" tall, weighed 163 pounds, and her blood pressure was 126/78.  ECF No. 801 at 270, 459.  Dr. Morisetti found Desselle was a very anxious person and that her hypertension was anxiety-driven.  ECF No. 8-1 at 271, 459.  Desselle's kidneys were normal, with a 6 mm. calcification v. calculus.  ECF No. 8-1 at 271, 459.  Dr. Morisetti changed Desselle's hypertension medication and switched her to Lexapro and Valium for anxiety.  ECF No. 8-1 at 271, 459.  Desselle's CKD 3 was found to be related to her hypertension.  ECF No. 8-1 at 272-73, 459.

In June 2017, Dr. Morisetti found Desselle was "severely anxious," but that medication controlled her blood pressure.  ECF No. 8-1 at 274.  Desselle complained of skipped heartbeats, so Dr. Morisetti increased her Coreg dosage.  ECF No. 8-1 at 275.  Desselle's CKD was found to be at stage 3.[2]  ECF No. 8-1 at 284-85.

In December 2017, Desselle complained of intermittent skipped beats since changing from Atenolol to Coreg.  ECF No. 8-1 at 273, 455.  Desselle weighed 151 pounds and her blood pressure was 135/78.  ECF No. 8-1 at 274, 455.  Her kidneys were normal.  ECF No. 8-1 at 274-75.

---

[2] "There are five stages of chronic kidney disease. . . . Your doctor determines your stage of kidney disease based on the presence of kidney damage and your glomerular filtration rate (GFR), which is a measure of your level of kidney function. Your treatment is based on your stage of kidney disease."  National Kidney Foundation: Stages of Chronic Kidney Disease, available at *https://www.kidney.org/sites/default/ files/docs/11-50-2106_fba_patbro_hearthealthy_3_1_1. pdf.*

In January 2018, modified exercise stress test was negative for ischemia and showed normal blood pressure.  ECF No. 8-1 at 340.

In June 2018,  Desselle again complained of intermittent skipped heartbeats. ECF No. 8-1 at 275.  Although Desselle was "very anxious," her mood and affect were appropriate and her interaction and eye contact were normal.  ECF No. 8-1 at 276-77, 453-54.  Dr. Morisetti noted that Desselle had skipped beats and was being seen by cardiology.  ECF No. 8-1 at 277, 454.  Chest x-rays showed her lungs were clear and she did not have any active chest disease.  ECF No. 8-1 at 336.  An EKG showed sinus bradycardia (a type of slow heartbeat), but was otherwise normal. ECF No. 8-1 at 337.  Desselle's kidneys were normal and her CKD 3 was stable. ECF No. 8-1 at 277, 290, 454.  It was noted that Desselle had a bladder prolapse surgery planned.  ECF No. 8-1 at 277, 454.  Desselle was also diagnosed with mixed hyperlipidemia and hypothyroidism.  ECF No. 8-1 at 328.

In August 2018, Desselle underwent surgical repair of a prolapsed anterior vaginal wall.  ECF No. 8-1 at 315-19.

In February 2019, Dr. Stefano Coppola-Fasick, a nephrologist at the LSU Nephrology Clinic, noted that Desselle was 64 years old, weighed 180 pounds, and was planning to undergo bladder prolapse surgery in August.  ECF No. 8-1 at 278-79.  Dr. Coppola-Fasick heard occasional skipped heartbeats.  ECF No. 8-1 at 278. He also noted that Desselle's CKD 3 is related to her hypertension (which is

anxiety-driven), her kidneys were normal, and her protein/creatinine ratio was 0.1 g/g.  ECF No. 8-1 at 279.  Desselle's GFR was 30-59.  ECF No. 8-1 at 292.

In June 2019, Desselle was diagnosed with essential (primary) hypertension and mixed hyperlipidemia.  ECF No. 8-1 at 304.

In March 2020, Dr. Darrell Caudill filled out a Physical Residual Functional Capacity Form for Desselle.  ECF No. 8-1 at 510.  Dr. Caudill agreed with the DDS's conclusions that Desselle has: exertional limitations, postural limitations, manipulative limitation, visual limitations, communicative limitations, and environmental limitations – with symptoms.  ECF No. 8-1 at 510.  Dr. Caudill also stated the limitations are consistent with the severity of Desselle's hypertension and mild cardiac arrhythmias and skipped beats–which are well-controlled on beta-blocker– and that there are no severe persistent arrhythmias.  ECF No. 8-1 at 510.

Dr. James Sturgis and Dr. James Pinkston, both psychologists, filled out psychiatric review technique forms in September 2019 and February 2020, respectively.  ECF No. 8-1 at 52, 65.  Both Dr. Sturgis and Dr. Pinkston found that Desselle does not suffer from any severe psychiatric illness.

Dr. Hollis Rogers filled out a Residual Functional Capacity Assessment in January 2020.  ECF No. 8-1 at 68.  Dr. Rogers found that Desselle can: occasionally (up to 1/3 of an 8 hour day) lift/carry up to 50 pounds; frequently (up to 2/3 of an 8 hour day) lift/carry up to 25 pounds; stand or walk up to 6 hours in a 8-hour day; sit

up to 6 hours in an 8-hour day; and do unlimited pushing/pulling as shown for lift/carry.  ECF No. 8-1 at 68.

In November 2020, Desselle was tested for an autoimmune disorder.  ECF No. 8-1 at 513-19.

### C.    Administrative Hearing

Desselle appeared at the December 2020 administrative hearing with her attorney and a vocational expert ("VE").  ECF No. 8-1 at 33.

Desselle testified that she used to work with developmentally disabled persons, driving vans to pick up clients and take them to the facility where she was employed, and then to take them home in the afternoon.  ECF No. 8-1 at 36. Desselle taught personal hygiene (to mostly girls) and like how to write checks, to prepare them for living on their own.  ECF No. 8-1 at 36-37.

Desselle testified that she stopped working because her blood pressure affected her eyesight, and she developed kidney problems that required her to stay close to a bathroom.  ECF No. 8-1 at 37.  Desselle's driving route took 2 ½ hours. ECF No. 8-1 at 37.  Desselle was not allowed to leave the clients alone on the bus while she used the bathroom.  ECF No. 8-1 at 42.  Although Desselle developed those problems in 2009, she did not stop working until 2015.  ECF No. 8-1 at 37. Desselle stated that she also stopped because her eyesight was fading and her medication made her too sleepy to drive.  ECF No. 8-1 at 37.  Desselle admitted that

she applied to just be a trainer (and not drive), which she thinks she could have done, but the position was already filled.  ECF No. 8-1 at 38.

Desselle testified that, since November 2020, she has suffered knee fractures, joint pain, back pain, and problems closing and gripping with her hands.  ECF No. 8-1 at 38.  Desselle was tested by Dr. Agnes Solon, a rheumatologist, for an auto-immune disorder.  ECF No. 8-1 at 38.

Desselle testified that she has not looked for work since she stopped working in 2015, but she was able to draw $600/month in Social Security benefits at age 62.  ECF No. 8-1 at 38-39.

Desselle testified that she is no longer able to work, even as a trainer, because she has a lot of pain in her joints and back now.  ECF No. 8-1 at 40.  Also, Desselle's blood pressure medication requires her to go to the restroom eight to ten times per day.  ECF No. 8-1 at 40.

The VE testified that Desselle's past work was as: a resident care aide (DOT 355.377-018, medium work, skilled, SVP 6); and a driver or shuttle bus driver (DOT 913.663-018, medium work, semiskilled, SVP 3).  No. 8-1 at 41.

The ALJ posited a hypothetical to the VE, involving a person limited to medium work (lifting 50 pounds occasionally, 25 pounds frequently, standing and walking up to six hours in an eight-hour day).  ECF No. 8-1 at 41.  The VE testified that such a person could perform Desselle's past work.  ECF No. 8-1 at 41.  With the additional limitation of using the restroom briefly (for a minute or two) once every

9

hour, the person would have difficulty doing the driving job, but may still be able to work as a resident care aide.  ECF No. 8-1 at 42.  The VE testified that there are 10,000 resident aide jobs nationally.  ECF No. 8-1 at 42.

The VE further testified that such a person could also work as a hospital cleaner (DOT 323.687-010, medium work, unskilled, SVP 2, 55,233 jobs nationally), or a day worker, cleaning private households (DOT 201.687-014, medium work, unskilled, SVP 2, 38,291 jobs nationally).  ECF No. 8-1 at 43.  The VE testified that, if the person had to miss three or four days per month for flare-ups, she would not be able to maintain full-time competitive employment in any occupation in the national economy.  ECF No. 8-1 at 44.

### D.    ALJ's Findings

To determine disability, the ALJ applied the sequential process outlined in 20 C.F.R. §404.1520(a) and 20 C.F.R. §416.920(a).  The sequential process required the ALJ to determine whether Desselle (1) is presently working; (2) has a severe impairment; (3) has an impairment listed in or medically equivalent to those in 20 C.F.R. Pt. 404, Subpt. P, App. 1 ("Appendix 1"); (4) is unable to do the kind of work she did in the past; and (5) can perform any other type of work.  If it is determined at any step of that process that a claimant is or is not disabled, the sequential process ends.  A finding that a claimant is disabled or is not disabled at any point in the five-step review is conclusive and terminates the analysis.  *See Greenspan v.*

*Shalala*, 38 F.3d 232, 236 (5th Cir. 1994), cert. den., 514 U.S. 1120 (1995) (citing *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987)).

To be entitled to benefits, an applicant bears the initial burden of showing that she is disabled.  Under the regulations, this means that the claimant bears the burden of proof on the first four steps of the sequential analysis.  Once this initial burden is satisfied, the Commissioner bears the burden of establishing that the claimant is capable of performing work in the national economy.  *See Greenspan*, 38 F.3d at 237.

In the case at bar, the ALJ found that Desselle has not engaged in substantial gainful activity since May 1, 2015, that her disability insured status expired on June 30, 2020, and that she has severe impairments of obesity, chronic kidney disease (CKD) Stage 3, hypertension, and arrhythmia, but that she does not have an impairment or combination of impairments listed in or medically equal to one listed in Appendix 1.  ECF No. 8-1 at 16-18.

At 65 years old, Desselle was closely approaching retirement age on the date last insured, and had a limited education.  ECF No. 8-1 at 20.

At Step No. 5 of the sequential process, the ALJ further found that Desselle has the residual functional capacity to perform the full range of medium work, but was unable to perform her past relevant work.  ECF No. 18-1 at 20.  However, Desselle was able to perform other medium work that existed in significant numbers in the national economy, such as resident care aide (DOT 355.3777-017);

11

hospital cleaner (DOT 323.687-010); and day worker (DOT 301.687-014). Therefore, Desselle was not under a disability at any time from May 1, 2015 through June 30, 2020, the date she was last insured. ECF No. 8-1 at 22.

## II.    Law and Analysis

### A.    Scope of Review

In considering Social Security appeals, a court is limited by 42 U.S.C. §405(g) to a determination of whether substantial evidence exists in the record to support the Commissioner's decision and whether there were any prejudicial legal errors. *See McQueen v. Apfel*, 168 F.3d 152, 157 (5th Cir. 1999). For the evidence to be substantial, it must be relevant and sufficient for a reasonable mind to support a conclusion; it must be more than a scintilla but need not be a preponderance. *See Falco v. Shalala*, 27 F.3d 160, 162 (5th Cir. 1994) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

Finding substantial evidence does not involve a simple search of the record for isolated bits of evidence which support the Commissioner's decision, but must include a scrutiny of the record as a whole. The substantiality of the evidence must take into account whatever in the record fairly detracts from its weight. *See Singletary v. Bowen*, 798 F.2d 818, 823 (5th Cir. 1986).

A court reviewing the Commissioner's decision may not retry factual issues, reweigh evidence, or substitute its judgment for that of the fact-finder. *See Fraga v. Bowen*, 810 F.2d 1296, 1302 (5th Cir. 1987); *Dellolio v. Heckler,* 705 F.2d 123, 125

(5th Cir. 1983). The resolution of conflicting evidence and credibility choices is for the Commissioner and the ALJ, rather than a court. *See Allen v. Schweiker,* 642 F.2d 799, 801 (5th Cir. 1981); *see also Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir. 1992). A court does have authority, however, to set aside factual findings that are not supported by substantial evidence and to correct errors of law. *See Dellolio*, 705 F.2d at 125. But to make a finding that substantial evidence does not exist, a court must conclude that there is a "conspicuous absence of credible choices" or "no contrary medical evidence." *See Johnson v. Bowen*, 864 F.2d 340 (5th Cir. 1988); *Dellolio*, 705 F.2d at 125.

**B.** <u>**Desselle had the residual functional capacity to perform medium work.**</u>

On appeal Desselle argues that the ALJ failed to articulate a rational medical evidentiary basis for ruling that she could perform the activities identified by the residual functional capacity on a regular and continuous basis. Desselle points out that, if she can only perform light work, she would be considered disabled from the "Grid" rules.

A claimant's impairments may cause physical or mental limitations that affect what he can do in a work setting. Residual functional capacity is a medical assessment, based on all of the relevant evidence, of the work a claimant can perform despite his or her limitations. *See* 20 C.F.R. §§ 404.1545, 416.945. The burden of proof in a disability case is on the claimant to show that she is unable to perform her usual line of work, Once that fact is established, the burden shifts to

the Commissioner to show that the claimant is able to perform some other kind of substantial work available in the national economy. *See Herron v. Bowen*, 788 F. 2d 1127, 1131 (5th Cir. 1986); *see also Babineaux v. Heckler*, 743 F.2d 1065, 1067 (5th Cir. 1984). The Commissioner has the burden to establish a claimant's residual functional capacity. *See Leggett v. Chater*, 67 F.3d 558, 565 (5th Cir. 1995).

SSR 96–8p provides that a residual functional capacity (RFC) "is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." *Myers v. Apfel*, 238 F.3d 617, 620 (5th Cir. 2001) (citing 1996 WL 374184, *1 (S.S.A.1996). "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." *Myers*, 238 F.3d at 620 (citing 1996 WL 374184, *2). "The RFC assessment is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities." *Myers*, 238 F.3d at 620 (citing 1996 WL 374184, *3). Residual functional capacity combines a medical assessment with the descriptions by physicians, the claimant, or others of any limitations on the claimant's ability to work. *See Elzy v. Railroad Retirement Board,* 782 F.2d 1223, 1225 (5th Cir.1986); *see also* 20 C.F.R. § 404.1545.

The claimant has the burden of proving she is disabled. *See Herron*, 788 F. 2d at 1131. Although Desselle argues she cannot lift more than 25 pounds, she did not submit any medical evidence to show she has physical limitations that preclude

her from performing medium level work on a regular and continuing basis.  ECF No. 8-1 at 20.  No doctor has stated that she is unable to perform medium level work, and no doctor advised her to stop doing her work.  Desselle admitted at her hearing that she applied to be just a trainer (and not drive) in 2015, which she thinks she could have done.

The ALJ noted that the state agency medical consultant found Desselle retained the ability to perform medium work.  ECF No. 8-1 at 19.  The ALJ also noted that Desselle had normal stress tests and physical examinations and stable laboratory results.  ECF No. 8-1 at 20.

Desselle contends the ALJ failed to classify every ailment, or medical term used to refer to her ailments (including hypothyroidism,[3] cardiomegaly,[4] non-rheumatic tricuspid heart disorder, sinus bradycardia,[5] mixed hyperlipidemia,[6]

---

[3] Hypothyroidism, or underactive thyroid, happens when your thyroid gland doesn't make enough thyroid hormones to meet your body's needs.  *See* MedlinePlus Health Topics: Hypothyroidism, *available at* https://medlineplus.gov/hypothyroidism.html  (U.S. National Library of Medicine and the National Institutes of Health).

[4] "Cardiomegaly" refers to an enlarged heart seen on any imaging test.  An enlarged heart is not a disease, but rather a sign of another condition.  *See* MedlinePlus: Enlarged Heart, available at *https://www.mayoclinic.org/diseases-conditions/enlarged-heart/symptoms-causes/syc-20355436?p=1* (U.S. National Library of Medicine and the National Institutes of Health).

[5] An arrhythmia that is too slow is bradycardia.  *See* MedlinePlus Health Topics: Arrhythmias, available at *https://medlineplus.gov/ency/article/001101.htm* (U.S. National Library of Medicine and the National Institutes of Health).  The ALJ found Desselle's arrhythmia, or sinus bradycardia, is a severe impairment.

[6] Mixed hyperlipidemia, or hyperlipidemia, is high cholesterol.  *See* MedlinePlus Medical Encyclopedia:      Cholesterol      and      Lifestyle,      available      at

15

insomnia) as "severe" or "non-severe." Likewise, Desselle's "vaginal prolapse repair" is, as stated, a repaired condition. Desselle has not alleged work-related limitations resulting from these "impairments."

Desselle had the burden of proving, with medical evidence, that those ailments affect her ability to work and, thus, are "severe." *See Stone v. Heckler*, 752 F.2d 1099 (5th Cir. 1985) (some impairments are so slight that the ability of the claimant to work can be decided without a full evaluation of vocational factors). The ALJ's finding that Desselle's only "severe impairments" are obesity, CKD Stage 3, hypertension, and arrhythmia, necessarily means he found her other ailments are "not severe." Because Desselle has not alleged additional work-related limitations resulting from her non-severe impairments, a failure by the ALJ to specifically consider those impairments is "irrelevant to the disposition" of Desselle's case and cannot provide a basis for reversal. *See Heck v. Colvin*, 674 Fed. Appx. 411, 414 (5th Cir. 2017) (*citing Chaparro v. Bowen,* 815 F.2d 1008, 1011 (5th Cir. 1987)).

However, the ALJ found Desselle can no longer do any of her past relevant work because her job as a resident care aide, DOT 355.377-018,[7] was heavy work as

---

*https://medlineplus.gov/ency/patientinstructions/000099.htm* (U.S. National Library of Medicine and the National Institutes of Health).

[7] The ALJ mis-stated, in his findings, that Desselle had worked as a "home attendant" (DOT 354.377-014). The VE stated that she was a resident care aide, DOT 355.377-018. However, both job apparently involve caring for disabled persons.

performed,[8] and her work as a transport driver was part-time and did not rise to the level of substantial gainful activity.  ECF No. 8-1 at 20.

Desselle complains that the ALJ "chose to disbelieve" her statement that she cannot lift more than 25 pounds.  However, "[a] claimant's symptoms . . . will be determined to diminish a claimant's capacity for basic work activities to the extent that the claimant's alleged functional limitations and restrictions due to symptoms . . . can reasonably be accepted as consistent with the objective medical evidence."  20 C.F.R. §404.1529(c)(4).   Because Desselle did not produce objective medical to support here statement that she cannot lift more than 25 pounds, the ALJ did not err in disregarding it.

Moreover, it is noted that Desselle's need to use the restroom frequently precludes her from continuing to drive disabled people, who cannot be left alone during a bathroom stop.  However, the medium level jobs identified by the VE accommodate Desselle's need to frequent bathroom breaks.  Based on the medical evidence submitted by Desselle, she can perform some medium work.

Because Desselle performed medium level work before she stopped working, and there is no medical evidence to show that she was unable to perform medium level work through June 30, 2020, the ALJ set forth a rational basis for concluding

---

[8] Desselle's written description of her job included lifting 50 pounds frequently.  ECF No. 8-1 at 213.  *See* 20 C.F.R. § 404.1567(d) ("heavy work").

Desselle testified that, when she stopped working as a driver in 2015, she applied for a job to work again as a resident care aide because she thought she could still do that.  However, there were no openings for that job.  ECF No. 8-1 at 38.

that Desselle was able to perform medium work from May 2015 through the date she was last insured, on June 30, 2020.

### C. Desselle does not meet the POMS exception because she had past relevant work as home attendant.

Desselle contends that she meets all the criteria under SSA's Program Operations Manual System ("POMS") DI 25010.001, to be considered disabled because she is not working at the substantial gainful activity level, has a limited education, can no longer perform past work due to a severe impairment, is over 55, and has no past relevant work.

DI 25010.001- Special Medical-Vocational Profiles.

### A. Introduction

The special medical-vocational profiles set forth in DI 25010.001B. lists combinations of the vocational factors of age, education and work experience that are so unfavorable that an individual who meets one of them will be deemed to be unable to adjust to other work and therefore will be found disabled at step 5 of the sequential evaluation process.

Consider whether a profile applies only after finding that a claimant cannot do any past relevant work. Because the profiles only require that a claimant have a severe impairment and because an incorrect decision might otherwise result, it is important to consider whether a profile applies before referring to the medical-vocational guidelines in DI 25025.005.

### B. Policy Principle

#### 1. Arduous Unskilled Work

A finding of "disabled" will be made for persons who:
• are not working at SGA level, and
• have a history of 35 years or more of arduous unskilled work, and

18

• can no longer perform this past arduous work because of a severe impairment(s), and
• have no more than a marginal education.

NOTE: This provision would not necessarily be defeated by very short periods of semi-skilled or skilled work if no transferable skills exist or by longer periods of semi-skilled or skilled work if it is clear that the skill acquired is not readily transferable to lighter work and makes no meaningful contribution to an individual's ability to do any work within his or her present functional capacity.

(See DI 25001.001 for the definitions of "arduous," "unskilled," and " marginal education" and DI 24505.000 for a discussion of severe impairment.)

### 2. No Work Experience

A finding of "disabled" will be made for persons who:
• have a severe impairment(s), and
• have no past relevant work (PRW), and
• are age 55 or older, and
• have no more than a limited education.

NOTE: It is not necessary to complete a residual functional capacity (RFC) form to determine that an individual meets this profile since he or she will have no PRW to compare to the RFC findings on a function-by-function basis. (See DI 24510.006.)

(See DI 25001.001 for the definitions of "PRW" and "limited education" and DI 24505.000 for a discussion of severe impairment.)

### 3. Lifetime Commitment

A finding of "disabled" will be made for persons who:
• are not working at SGA level, and
• have a lifetime commitment (30 years or more) to a field of work that is unskilled, or is skilled or semi-skilled but with no transferable skills, and
• can no longer perform this past work because of a severe impairment(s), and
• are closely approaching retirement age (age 60 or older), and

19

• have no more than a limited education.

(See DI 25001.001 for the definitions of "limited education" and DI 24505.000 for a discussion of severe impairment.)

NOTE: To satisfy the requirement for this profile, the 30 years of lifetime commitment work does not have to be at one job or for one employer but rather work in one field of a very similar nature. If the person has a history of working 30 years or more in one field of work, the use of this profile will not be precluded by the fact that the person also has work experience in other fields, so long as that work experience in other fields is not past relevant work which the person is still able to perform.

Because Desselle has past relevant work as a resident care aide (DOT 355.377-018), which is skilled work (SVP 6), she does not meet exceptions numbers 1 or 2 of POMS DI 25010.001. Desselle also does not meet exception number 3 because her employment records indicate that she did not work 30 years or more.[9] See ECF No. 8-1 at 147-48.

Therefore, Desselle is not entitled to a finding of disability under the exceptions set forth in POM DI 25010.001.

## III. <u>Conclusion</u>

Based on the foregoing, IT IS RECOMMENDED that the final judgment of the Commissioner be AFFIRMED and that Desselle's appeal be DENIED AND DISMISSED WITH PREJUDICE.

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed. R. Civ. P. 72(b), parties aggrieved by this Report and Recommendation have fourteen (14) calendar

---

[9] It is noted that the ALJ did not make a finding as the transferability of Desselle's work skills because he did not think it was material.

20

days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. No other briefs (such as supplemental objections, reply briefs, etc.) may be filed. Providing a courtesy copy of the objection to the undersigned is neither required nor encouraged. Timely objections will be considered by the District Judge before a final ruling.

Failure to file written objections to the proposed findings, conclusions, and recommendations contained in this Report and Recommendation within fourteen (14) days from the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Judge, except upon grounds of plain error.

THUS DONE AND SIGNED in chambers in Alexandria, Louisiana, this _____30th_____ day of August, 2022.

Joseph H.L. Perez-Montes
United States Magistrate Judge

21